UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TORAN V. PETERSON,

                    Plaintiff,                          Case No. 1:23-cv-894

v.                                                      Honorable Paul L. Maloney

HEIDI WASHINGTON et al.,

                    Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court

has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison

Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required

to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious,

fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant

immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must

read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and

accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton

v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint for failure to state a claim.

## Discussion

### I.      Factual Allegations

       Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events

about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan, and the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. Plaintiff sues MDOC Director Heidi Washington and MDOC Deputy Director J. Bush. (Compl., ECF No. 1, PageID.1.)

In Plaintiff's complaint, he alleges that since March of 2021, he has "been denied of the opportunity to attend religious services due to practice/custom at [MRF] an[d] [ICF] of holding that there must be more than one attendee in order for service to be held."[1] (*Id.*) Plaintiff states that his "sincerely held Weh of Life entails Native American practices such as use of the medicines as given in the Book of Enoch." (*Id.*) Plaintiff's "religious preference" is "marked down as Jewish/Hebrew-Israelite," and Plaintiff receives a Kosher diet. (*Id.*) Plaintiff alleges that the Kosher diet he receives is "a high potato (sugary) and soy diet." (*Id.*) Plaintiff states that "soy causes cancer and causes men to become sterile," and "sugar/foods which turn into sugar [he] can't have due to sugar being poison to the vessel." (*Id.*)

At some unspecified time, Plaintiff "wrote Lansing requesting an alternative diet in accordance with policy[,] which was denied by [Defendant] Bush on June 14, 2023." (*Id.*) Plaintiff claims that "[t]he decision to limit [his] practice of [his] sincerely held religious Weh of Life comes from the Director [Defendant] Washington[,] who is in control of governing the affairs of the MDOC." (*Id.*) Plaintiff further claims that Defendant Washington "knew or should have known of the denial to attend religious services through the many grievances filed regarding this topic." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment, as well as under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). (*Id.*, PageID.1–2.) Plaintiff also avers that Defendants

---

[1] The Court corrects the capitalization in quotations from Plaintiff's complaint.

2

violated his rights under state law. (*See id.*, PageID.1) As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.2.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Religious Exercise & RLUIPA Claims

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action

4

will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733–34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003))). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause

of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Thus, under the First Amendment or RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened.

### 1.    Free Exercise Clause

With respect to Defendant Bush, Plaintiff contends that at some unspecified time, Plaintiff "wrote Lansing requesting an alternative diet in accordance with policy[,] which was denied by [Defendant] Bush on June 14, 2023." (Compl., ECF No. 1, PageID.1.) Plaintiff claims that Defendant Bush denied Plaintiff "an 'alternative religious diet' in compliance with policy/[Plaintiff's] sincerely held religious practice/dietary rules which is reasonable (where all [Plaintiff] request[s] is not to be given []any soy products, potatos [sic]/foods which turn into sugar (starchy)[)]. (*Id.*, PageID.2 (emphasis omitted).) Although it is clear that Plaintiff would *prefer* not to receive soy products and "starchy" foods as part of his Kosher diet, Plaintiff fails to allege any facts to suggest that his desire not to receive these items stemmed from his religious beliefs, let alone that Defendant Bush knew that avoiding these items was a part of Plaintiff's religious practice. Instead, the facts alleged by Plaintiff suggest that Plaintiff simply had a personal preference to not eat soy products and starchy foods due to Plaintiff's concerns about health-related issues with these foods. The facts alleged by Plaintiff, therefore, do not suggest that his religious exercise was substantially burden by Defendant Bush's denial of Plaintiff's preferred diet.

Furthermore, to the extent that Plaintiff intended to hold Defendant Bush liable for Plaintiff's inability to attend group religious services, Plaintiff fails to allege any facts to suggest that Defendant Bush had any personal involvement in the matter. *See, e.g., Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not

allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Similarly, with respect to Plaintiff's claims regarding the denial of his request for an "alternative diet," Plaintiff fails to allege any facts suggesting that Defendant Washington had any personal involvement in the matter. *See, e.g.*, *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights)

As to Plaintiff's claim against Defendant Washington regarding Plaintiff's inability to attend group religious services, Plaintiff contends that "[i]t has been a long time practice/custom of [ICF] to hold that there must be five attendee[]s in order for prisoners to be allowed to go to/attend . . . religious callouts due to Director [Defendant] Washington's order," and "she's been placed on notice/knew or should've known that denying [Plaintiff] of [sic] attend service to practice [his] beliefs would substantially burden [his] sincerely held religious beliefs." (*Id.*) Plaintiff further claims that Defendant Washington "knew or should have known of the denial to attend religious services through the many grievances filed regarding this topic." (*Id.*, PageID.1.)

As an initial matter, although Plaintiff alleges in a conclusory manner that Defendant Washington "knew or should've known that denying [Plaintiff] of [sic] attend service to practice [his] beliefs would substantially burden [his] sincerely held religious beliefs," Plaintiff fails to allege any facts suggesting that Defendant Washington was personally involved in any such denial. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). And, regardless, Plaintiff fails to allege any facts about his need to attend group religious services as a part of his religious practice. In describing Plaintiff's religious beliefs, he simply alleges that his "sincerely held Weh of Life entails Native American practices such as use of the medicines as given in the

Book of Enoch." (Compl., ECF No. 1, PageID.1.) Besides alleging that he was denied "the opportunity to attend religious service," Plaintiff fails to allege any facts to show that attending group religious services is a part of his religious practice of "Weh of Life." (*See id.*, PageID.1–2.) Thus, the facts alleged by Plaintiff do not suggest that denying him the opportunity to attend group religious service substantially burdened his religious exercise.

Moreover, to the extent that Plaintiff intended to hold Defendants Washington and Bush liable due to their supervisory positions, government officials, such as Defendants Washington and Bush, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Therefore, to the extent that Plaintiff seeks to hold Defendants Washington and Bush liable simply due to their supervisory positions, Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that Defendants Washington and Bush were personally involved in the alleged violations of Plaintiff's constitutional rights.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a First Amendment free exercise claim against Defendants Washington and Bush.

2.    **RLUIPA**

Plaintiff also fails to state a RLUIPA claim against Defendants Washington and Bush. For the same reasons set forth above, Plaintiff fails to allege sufficient facts to show that Defendants placed a substantial burden on his religious practice. *See supra* Section II.A.1. For this reason alone, Plaintiff's RLUIPA claims will be dismissed. Plaintiff's RLUIPA claims also fail for the reasons set forth below.

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, 563 U.S. 277 (2011);[2] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[3]

Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity. *See Will*, 491 at 71; *Matthews*, 35 F.3d at 1049. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign

---

[2] The United States Supreme Court granted certiorari only on the question of "[w]hether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[3] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The Sixth Circuit stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

Here, Plaintiff does not indicate in which capacity he is suing Defendants. However, assuming, without deciding, that he intended to sue Defendants in their official capacity, Plaintiff would only be able to raise a RLUIPA claim for injunctive or declaratory relief against Defendants. However, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

In this action, Plaintiff claims that the alleged constitutional and statutory wrongs occurred during his incarceration at MRF and ICF. Plaintiff is no longer incarcerated at either facility. At the time that Plaintiff filed his complaint, he was incarcerated at ICF, and in the complaint, Plaintiff

claimed that his ability to attend religious service was "an ongoing issue." (ECF No. 1, PageID.1.) However, Plaintiff is now incarcerated at ARF, and Plaintiff has not alleged any facts to suggest that this continues to be an issue at ARF. Under these circumstances, Plaintiff has failed to allege sufficient facts to show a continuing violation of federal law, and thus, no basis exists for granting either injunctive or declaratory relief.

Therefore, for all of the reasons set forth above, Plaintiff's RLUIPA claims against Defendants will be dismissed.

### B.    State Law Claims

Plaintiff alleges that Defendants violated state law. (*See* Compl., ECF No. 1, PageID.1 (stating that the "Court has supplemental jurisdiction over the P[laintiff's] state tort claims").)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or the MDOC's policies. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

11

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 3, 2023                    /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge

12